**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DAVID PEDREIRA,
Plaintiff,

v. Case No. 3:24-cv-1875 (OAW)

PEARSON, *et al*.,
Defendants.

# INITIAL REVIEW ORDER

While detained at Corrigan Correctional Center ("Corrigan")[1] self-represented plaintiff David Pedreira filed an amended complaint[2] under 42 U.S.C. § 1983 against nine prison officials there. He brings claims for excessive force, failure to intervene, deliberate indifference to health or safety, and retaliation, seeking damages and declaratory relief.

---

[1] The Department of Correction ("DOC") and state Judicial Branch websites show that Plaintiff currently has been detained since August 4, 2026, and that he is held at the Corrigan Correctional Center. *See* DOC, *Inmate Information*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=287610 (last visited Aug. 24, 2026); Judicial Branch, *Pending Criminal / Motor Vehicle*, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last visited Aug. 24, 2026). However, it appears that at all times relevant to his amended complaint, Plaintiff was detained with multiple pending criminal cases, and that he was sentenced on several of them on September 11, 2025. *See Criminal/Motor Vehicle Convictions*, https://www. jud2.ct.gov/ crdockets/SearchByDefDisp.aspx (last visited Aug. 24, 2026). The court may take judicial notice of these websites. *See*, *e.g*., *Taveras v. Semple*, No. 3:15-cv-00531 (SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC inmate locator).

[2] Plaintiff filed his original complaint in November of 2024. Compl., ECF No. 1. But Plaintiff filed an amended complaint before the court conducted its initial review of Plaintiff's original complaint under 28 U.S.C. § 1915A(a). *See* Am. Compl., ECF No. 22. Here, Plaintiff's original complaint had not yet proceeded to service, so he may amend his complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1) (party may amend their pleading "once as a matter of course" before service). "[A]n amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 225 (2d Cir. 2025) (citation modified). Accordingly, the court considers the amended complaint to be the operative complaint and will not consider any allegations from the original complaint. *See Costa v. Kocaqi*, No. 3:24-cv-01586 (KAD), 2025 WL 1207538, at *2 (D. Conn. Apr. 25, 2025).

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion thereof, which is frivolous or malicious, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune therefrom. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

Accordingly, the court has thoroughly reviewed all factual allegations in the complaint and has conducted an initial review of the allegations therein under 28 U.S.C. § 1915A. The court's conclusions are as follows.

## I. <u>FACTUAL BACKGROUND</u>

The court summarizes only the basic factual allegations in Plaintiff's amended complaint necessary for context to the ruling below.

Plaintiff is a prisoner with "a long history of mental illness" who was housed in the restrictive housing unit at Corrigan in May of 2024. Am. Compl., ECF No. 22 ¶ 2. While there, Plaintiff had a "mental health breakdown." *Id.* Lieutenant Pearson asked Plaintiff if Plaintiff was going to hurt himself. *Id.* Plaintiff told Pearson, "Yes." *Id.* Prison officials then stripped Plaintiff of his clothes, gave him a safety gown, placed him on Behavior Observation Status ("B.O.S."), and put Plaintiff in a B.O.S. cell. *Id.*

Once in the B.O.S. cell, Plaintiff "smashed [his] head" against the door and wall several times. *Id.* This caused Plaintiff to pass out on the cell floor, which upset Pearson. *Id.* Pearson opened the "trap" on the cell door and began spraying chemical agent into

the cell, "soaking" Plaintiff from "head[-]to[-]toe" as he laid on the cell floor, "not moving." *Id.* Pearson then called the "C.E.R.T." team and directed them to Plaintiff's cell. *Id.* ¶ 3. The C.E.R.T. team sprayed him with chemical agent and "roughed [Plaintiff] up." *See id.*

The C.E.R.T. team and Pearson eventually removed Plaintiff from the B.O.S. cell. *Id.* ¶ 4. When removed, Plaintiff was naked and exposed to other prisoners and staff in the unit, including women and a chaplain. *Id.*; *see also id.* at 15. Pearson said, "You animal—if you want to act like an animal[,] I am going to treat you like an animal." *Id.* The C.E.R.T. team dragged Plaintiff to the shower area, where the team "very briefly" rinsed Plaintiff. *Id.* Plaintiff told staff members that he needed to rinse his genitals because they were burning. *Id.* The staff members refused to let Plaintiff rinse his genitals. *Id.* Once back in his cell, Plaintiff complained of his burning genitals to Warden Dougherty. *Id.* Warden Dougherty replied, "It was up to Lieutenant Pearson" to permit Plaintiff to rinse his genitals. *See id.* Prison staff did not permit Plaintiff to rinse his genitals for "several days." *Id.*

Ten days after prison staff sprayed Plaintiff with chemical agent, Plaintiff requested preservation of video from the incident and filed grievances regarding Plaintiff's "treatment" and prison officials' "failure to take into consideration [Plaintiff's] mental health issues." *Id.* ¶ 5. Prison officials denied Plaintiff access to the video footage until November of 2024. *Id.* ¶ 6. Doctor Gagne "changed [Plaintiff's] mental health status abruptly" "[i]n retaliation for the complaints" Plaintiff lodged. *Id.* ¶ 7. The change in mental health status reflected that Plaintiff "was somehow cured of a lifelong mental illness." *Id.*

Medical staff also "abruptly" took Plaintiff off the mental health medication he had

been taking for the past fourteen months. *Id.* ¶¶ 8–9. Plaintiff wrote to his mental health case worker and Dougherty at the end of November of 2024. *Id.* ¶ 9. Plaintiff's writing to Dougherty "explained in detail what was going on." *Id.* Dougherty responded by telling Plaintiff that he should "write mental health chain of command." *Id.* Plaintiff did so by writing the "head of regional medical staff." *Id.* ¶ 10. Plaintiff also filed a health services grievance in December of 2024. *Id.* ¶ 11. Prison officials transferred Plaintiff to Cheshire Correctional Institution ("Cheshire") three days after he filed his health services grievance. *Id.* ¶ 12.

When Plaintiff arrived at Cheshire, a psychologist increased Plaintiff's "mental health level." *Id.* ¶ 13. But mental health officials later held a meeting in which they decided that Plaintiff only qualified for cognitive behavioral therapy, not medication. *Id.* ¶ 14. Plaintiff thereafter filed a writ of habeas corpus in state court challenging the conditions of his confinement. *Id.* ¶ 15. A doctor prescribed medication in February of 2025. *Id.* ¶ 18. Plaintiff did not receive mental health treatment or medication from November of 2024 to February of 2025. *Id.* ¶ 19.

## II. <u>**DISCUSSION**</u>

*Pro se* submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (citation modified). Liberally construing Plaintiff's complaint, it most strongly suggests claims for excessive force, failure to intervene, deliberate indifference to health or safety, and retaliation. The court discusses each claim in turn.

**A. <u>Excessive Force</u>**

The complaint first suggests that Plaintiff was subjected to an excessive use of force when prison staff sprayed him with chemical agent and "roughed [Plaintiff] up" while he was held in the B.O.S. cell. *See* Am. Compl., ECF No. 22 ¶¶ 2–3.

Excessive force claims may arise under the Fourth, Eighth, or Fourteenth Amendments depending on the plaintiff's legal status at the time of the incident. *See Graham v. Conner*, 490 U.S. 386, 395 (1989) (stating that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment") (citation modified); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (concluding that "the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified"); *Graham*, 490 U.S. at 395 n.10 (noting that "the Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment").

Plaintiff was awaiting disposition of a probation violation when prison officials used force on him on May 21, 2024. *See supra* note 1. "This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment." *Reinoso-Delacruz v. Ruggerio*, No. 3:19-cv-149 (SRU), 2019 WL 2062434, at *2 (D. Conn. May 9, 2019). But this court has concluded that excessive force claims brought by such persons are analyzed under the Fourteenth Amendment. *See*, *e.g.*, *Randolph v. Marcucci*, No. 3:24-

cv-243 (OAW), 2024 WL 1860060, at *2 (D. Conn. Apr. 29, 2024).

Under the Fourteenth Amendment, prison guards may use *some* force "to preserve internal order and discipline and to maintain institutional security." *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). Thus, to state a claim for the use of excessive force, a pretrial detainee must "show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 397–98. A plaintiff may prevail by showing that actions taken against him "are not 'rationally related to a legitimate nonpunitive governmental purpose,' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 398 (quoting *Bell*, 441 U.S. at 561).

Courts have considered the use of a chemical agent against a compliant inmate to be a use of excessive force. *Jordan v. Dep't of Corr.*, No. 3:24-cv-236 (VAB), 2025 WL 1835955, at *10 (D. Conn. July 3, 2025) (citation omitted). But courts have also considered the use of chemical agent against a disruptive inmate to be "an acceptable means of gaining control" of such an inmate. *Id.* (citations omitted).

Plaintiff alleges that Pearson deployed chemical agent into Plaintiff's cell after Plaintiff "smashed [his] head" against the door and wall of his B.O.S. cell. Am. Compl., ECF No. 22 ¶ 2. Out of context, this could be considered a disruptive act. But here, smashing Plaintiff's head against the door and wall caused him to pass out on the cell floor. *Id.* While Plaintiff was passed out, he was no longer disruptive. Because Plaintiff was no longer disruptive, there was no "legitimate nonpunitive governmental purpose," *Kingsley*, 576 U.S. at 398, for Pearson to deploy chemical agent into Plaintiff's cell. *See,*

*e.g., Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) (concluding that "a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force").

At any rate, there would be no reason to "soak[ ]" Plaintiff from "head[-]to[-]toe" in chemical agent as he laid on the cell floor, "not moving." Am. Compl., ECF No. 22 ¶ 2; *Kingsley*, 576 U.S. at 398; *Davis v. Rinaldi*, No. 3:19-cv-504 (CSH), 2019 WL 7879729, at *12 (D. Conn. Oct. 31, 2019) (concluding that plaintiff had stated excessive force claim after "[t]aking [p]laintiff's claim as true that more chemical agent than needed was used against him"). Accordingly, Plaintiff has stated an excessive force claim. But the court will not permit this claim to proceed against all defendants.

Among other relief, Plaintiff seeks monetary damages. *See* Am. Compl., ECF No. 22 at 15–16. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (citation modified). "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quotation omitted). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying

constitutional violation directly against the official without relying on a special test for supervisory liability").

Plaintiff has sufficiently alleged that Pearson "directly participat[ed]" in the use of excessive force, such that Pearson may be considered personally involved. *See* Am. Compl., ECF No. 22 ¶ 2; *Victory*, 814 F.3d at 67. But Pearson has failed to allege the personal involvement of any other defendant in the use of excessive force. Plaintiff alleges that Pearson directed the C.E.R.T. team to Plaintiff's cell, where Plaintiff "was sprayed yet again with chemical agents and 'roughed up.'" Am. Compl., ECF No. 22 ¶ 3. However, Plaintiff does not allege who, amongst the C.E.R.T. team, deployed chemical agent.[3] *See id.* As such, Plaintiff has not sufficiently alleged that any defendant other than Pearson "directly participat[ed]" in the use of excessive force.[4] *Victory*, 814 F.3d at

---

[3] Plaintiff identifies John Does 1–6 as members of the C.E.R.T. Team. *See* Am. Compl., ECF No. 22 at 1–2. "Although it is proper for a section 1983 plaintiff to use a 'Doe' pleading until such time as her identity can be learned through discovery, a plaintiff still must establish each Doe defendant's personal involvement in the alleged constitutional deprivation." *Torres v. Connection, Inc.*, No. 3:22-cv-00883 (SALM), 2023 WL 2477502, at *3 (D. Conn. Mar. 13, 2023) (citation modified). Because Plaintiff does not describe the actions of each individual John Doe defendant in the body of his complaint, he cannot establish their personal involvement. *See id.* (dismissing claims against John Doe defendants for lack of personal involvement).

[4] Courts in this circuit have recognized that "when a supervisory prison official receives a particular grievance, personally reviews it, and responds and/or takes action in response, such conduct may constitute sufficient 'personal involvement' to establish individual liability for the alleged constitutional violation." *Young v. Choinski*, 15 F. Supp. 3d 172, 191 (D. Conn. 2014) (collecting cases). Plaintiff maintains that he "wrote" Dougherty in late November to "explain[ ] in detail what [Plaintiff] was going through." Am. Compl., ECF No. 22 ¶ 9. To the extent this writing could be construed as a "grievance," Dougherty's response telling Plaintiff to "write mental health chain of command," *id.*, could, under *Young*, establish Dougherty's personal involvement. But there is no indication in the amended complaint that "what [Plaintiff] was going through" included the incident involving excessive force or its aftermath. *See id.* And Dougherty's brief response—which is not itself enough to establish personal involvement, *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (prison commissioner's brief response to prisoner's letter did not demonstrate personal involvement)—suggests that the content of the letter concerned mental health treatment and not any other issue. Accordingly, Dougherty's brief response to Plaintiff's letter does not establish Dougherty's personal involvement in this violation or any other violation.

67; *see also Jordan v. Wright*, No. 3:24-cv-1166 (VAB), 2024 WL 3742767, at *10 (D. Conn. Aug. 9, 2024) (noting that "the three John Doe correctional officers may have been there when [an alleged constitutional violation] happened, but merely being present when a constitutional violation occurs is insufficient to establish personal involvement") (citation modified). Accordingly, Plaintiff may only pursue damages from Pearson on his excessive force claim.

**B. Failure to Intervene**

The complaint next suggests that prison officials failed to intervene in the use of excessive force. "Prison officials can also be held liable under section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Huertas v. Guadarrama*, No. 3:25-cv-118 (SRU), 2025 WL 1868045, at *5 (D. Conn. July 7, 2025) (citation modified). "To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene." *Deegan v. Doe #1*, No. 3:19-cv-1356 (MPS), 2019 WL 5964816, at *3 (D. Conn. Nov. 13, 2019) (citation modified). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Because Pearson directed the C.E.R.T. team to Plaintiff's cell, the court presumes that Pearson "had a realistic opportunity to intervene and prevent the harm" caused by

the C.E.R.T. team spraying additional chemical agent into Plaintiff's cell. Am. Compl., ECF No. 22 ¶ 3. The court will also presume that Pearson "knew that the victim's constitutional rights were being violated" when C.E.R.T. team members sprayed Plaintiff with additional chemical agent because Pearson had already "soak[ed]" Plaintiff "head[-]to[-]toe" in chemical agent. *See id.* ¶ 2. By directing C.E.R.T. team members to Plaintiff's cell instead of rendering aid to Plaintiff, it follows that Pearson "did not take reasonable steps to intervene." Accordingly, Plaintiff has stated a failure to intervene claim. However, Plaintiff may pursue this claim only against Pearson because Plaintiff fails to allege facts suggesting any other defendant "directly participat[ed]" in failing to intervene in the deployment of chemical agent.

**C. <u>Deliberate indifference to Health and Safety</u>**

The complaint further suggests that prison officials were deliberately indifferent to Plaintiff's health and safety by refusing to let Plaintiff rinse his "burning" genitals. *See* Am. Compl., ECF No. 22 ¶ 4; *Shabazz v. Semple*, No. 3:17-cv-904 (KAD), 2019 WL 1979959, at *6 (D. Conn. May 3, 2019) (construing allegations that prison officials failed to decontaminate plaintiff with a "special solution" after prison officials maced plaintiff as a claim for deliberate indifference to health or safety).

Claims alleging deliberate indifference to health or safety are analyzed under the due process clause of the Fourteenth Amendment when brought by pretrial detainees, *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017), but are analyzed under the cruel and unusual punishment clause of the Eighth Amendment when brought by a sentenced prisoner, *see Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019). Because it appears

that Plaintiff was a probationer awaiting disposition of his revocation proceeding on when defendants refused to let him rinse his genitals, *see supra* note 1, the court considers him to have been a pretrial detainee at such time, and thus evaluates his deliberate indifference to health or safety claim under the Fourteenth Amendment, *see Randolph*, 2024 WL 1860060, at *2 (treating probationer awaiting disposition of his revocation proceeding as pretrial detainee and evaluating his excessive force claim under the Fourteenth Amendment).

To state a Fourteenth Amendment claim for deliberate indifference to health or safety, Plaintiff must satisfy two elements: an objective element "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and a subjective element "showing that the officer acted with at least deliberate indifference to the challenged conditions." *Shakir v. Stankye*, 805 F. App'x 35, 40 (2d Cir. 2020) (summary order) (quoting *Darnell*, 849 F.3d at 29). The subjective element may be satisfied either by showing that a defendant intentionally imposed the conditions at issue, or that a defendant "recklessly fail[ed] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* (quoting *Darnell*, 849 F.3d at 35).

Courts in this district have concluded that "[i]njuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention." *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-cv-1249 (CSH), 2018 WL 4604308, at *9–10 (D. Conn. Sept. 25, 2018) (citation modified).

Therefore, Plaintiff's allegation that the chemical agent "burn[ed]" his genitals, Am. Compl., ECF No. 22 ¶ 4, while somewhat vague, is sufficient to satisfy the objective component, *see*, *e.g.*, *Jordan*, 2025 WL 1835955, at *11 (plaintiff's allegations that pepper spray caused "severe pain and anguish" and that he "scream[ed]" in "tortuous pain" was sufficient to satisfy objective component).

Plaintiff's allegation that prison officials, including Warden Dougherty, refused to permit Plaintiff to rinse his genitals for "several days," Am. Compl., ECF No. 22 ¶ 4, is sufficient to satisfy the subjective component, *see*, *e.g.*, *Jordan*, 2025 WL 1835955, at *11 (plaintiff's "allegation that correctional officers placed him in in-cell restraints instead of providing medical attention to him [for pain resulting from pepper spray] satisfies the subjective element of his deliberate indifference claim") (citation modified). Accordingly, this claim may proceed.

But as with Plaintiff's excessive force and failure to intervene claims, this claim may only proceed against defendants who were personally involved in the alleged constitutional violation. *See Wright*, 21 F.3d at 501; *Victory*, 814 F.3d at 67; *Tangreti*, 983 F.3d at 620. The only defendant Plaintiff identifies as having denied Plaintiff's request to rinse his burning genitals is Warden Dougherty. *See* Am. Compl., ECF No. 22 ¶ 4. Accordingly, this claim may proceed only against Warden Dougherty.

**D. <u>Retaliation</u>**

The complaint also suggests that prison officials retaliated against Plaintiff for filing complaints and grievances after prison staff used excessive force on him. Plaintiff alleges, for instance, that Doctor Gagne "changed [Plaintiff's] mental health status

abruptly" "[i]n retaliation for the complaints" Plaintiff made. Am. Compl., ECF No. 22 ¶ 7. Plaintiff further alleges that he "believe[d]" his transfer to Corrigan "to be retaliatory" because prison officials sought to "make the [p]roblem go away." *Id.* ¶ 12 (internal quotation marks omitted).

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (citation modified).

"[I]t is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citation modified). Accordingly, Plaintiff's health services grievance filed before his transfer, *see* Am. Compl., ECF No. 22 ¶ 11, constitute protected speech, in satisfaction of the first component.

And while it is unclear whether Gagne's change in Plaintiff's "mental health status" could be considered an adverse action, "[a]n inmate's transfer to another prison facility—even to a prison facility with comparable conditions—can rise to the level of an adverse action for purposes of a First Amendment retaliation claim." *Raynor v. Trumell*, No. 3:24-cv-1270 (KAD), 2025 WL 375073, at *6 (D. Conn. Feb. 3, 2025) (citing *Smith v. Levine*, 510 F. App'x 17, 21 (2d Cir. 2013) (summary order) (collecting cases)). Thus, Plaintiff's allegations also satisfy the second component.

However, Plaintiff's complaint fails to allege facts satisfying the third component—"that there was a causal connection between the protected [conduct] and the adverse action." *Espinal*, 558 F.3d at 128. Plaintiff is required to allege facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Lewis v. Stango*, No. 3:22-cv-1248 (OAW), 2023 WL 4684666, at *6 (D. Conn. July 21, 2023) (citation modified). In other words, Plaintiff must allege facts suggesting that his grievance was a substantial or motivating factor in Gagne's decision to change Plaintiff's "mental health status" or in a prison official's decision to transfer Plaintiff to another prison.

The complaint contains no facts suggesting that Gagne or the prison official who authorized Plaintiff's transfer were the subject of Plaintiff's grievance. Thus, the court can only infer that Plaintiff alleges these officials retaliated against Plaintiff on behalf of other prison staff. But "[t]he Second Circuit as well as other district courts within the Circuit have observed that it is difficult to establish one defendant's retaliation for complaints against another defendant." *Dixon v. Lupis*, No. 3:20-cv-1754 (VLB), 2021 WL 4391246, at *9 (D. Conn. Sept. 24, 2021) (collecting cases) (citation modified). And "[r]etaliation claims have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer." *Jones v. Fischer*, No. 9:10-cv-1331 (GLS) (ATB), 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) (collecting cases); *see*, *e.g.*, *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claims against a correctional officer where the only alleged basis for retaliation was a complaint about a prior incident by another correctional officer).

Here, there are no facts in the amended complaint suggesting that Gagne or the prison official authorizing Plaintiff's transfer even knew of Plaintiff's grievances. As such, Plaintiff has failed to allege facts suggesting a causal connection between Plaintiff's protected speech and any allegedly adverse action. *See*, *e.g.*, *Jordan*, 2025 WL 1835955, at *8 (dismissing First Amendment retaliation claim because plaintiff "failed to allege any non-conclusory facts showing that other staff even knew about the grievance filed against [other officers], let alone retaliated against [plaintiff] in response to it") (citation modified). Accordingly, Plaintiff's First Amendment retaliation claim is dismissed. 28 U.S.C. § 1915A(b)(1).

**D. <u>Other Claims</u>**

Plaintiff also brings other claims that must be dismissed. Some of these claims cannot withstand dismissal because they are not cognizable in a § 1983 action.

As to the first category, Plaintiff alleges that Pearson violated Plaintiff's constitutional rights by stating, "You animal[–]if you want to act like an animal[,] I am going to treat you like an animal." Am. Compl., ECF No. 1 ¶ 20. Plaintiff also alleges that Pearson violated Plaintiff's constitutional rights by "removing [Plaintiff] from [his] cell naked." *Id.* But these words and actions, however insensitive, do not amount to constitutional violations. Callous statements towards an inmate are not actionable in a section 1983 suit. *See*, *e.g.*, *Mitchell v. Washington*, No. 3:24-cv-864 (VAB), 2024 WL 5010487, at *6 (D. Conn. Dec. 6, 2024) (concluding that prison officials' "statement [to inmate], which might be construed as callous, is not an actionable constitutional violation") (citation modified). And "[i]ncidental, brief viewing of an inmate's naked body by an

opposite sex guard has been held not to violate the inmate's constitutional rights." *Abrams v. Erfe*, No. 3:17-cv-1570 (CSH), 2018 WL 3238825, at *6 (D. Conn. July 3, 2018) (collecting cases). Accordingly, any claims based on Pearson's statements or the removal of Plaintiff from his cell while nude must be dismissed. 28 U.S.C. § 1915A(b)(1).

As to the second category, his claims related to the events in Chesire must be dismissed because, while potentially supporting a constitutional violation, the defendants are improperly joined in this suit. Rule 18(a) of the Federal Rules of Civil Procedure permits "[a] party asserting a claim . . . [to] join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). But when there are multiple opposing parties, as there are here, Rule 20(a)(2) permits joinder of multiple defendants in one action only if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" *and* (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The court may "drop a party" or "sever any claim against any party" that it finds to be improperly joined. Fed. R. Civ. P. 21.

"Misjoinder of parties is not a ground for dismissing an action[,]" *id.*, but "[m]isjoinder of unrelated claims against multiple defendants is a particular concern in prisoner-initiated cases because of the applicability of the three strikes and filing fee provisions of the Prison Litigation Reform Act." *Urbanski v. Dep't of Corr.*, No. 3:18-cv-1323 (VLB), 2019 WL 6683047, at *8 (D. Conn. Dec. 5, 2019). Courts have observed that some plaintiffs "will try to avoid the filing fee and 'three strikes' provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed

in separate actions which require separate filing fees and would count as separate 'strikes' if dismissed on certain grounds." *Owens v. Connecticut*, 771 F. Supp.3d 92, 95 n.2 (D. Conn. 2025) (quoting John Boston & Daniel E. Manville, *Prisoners' Self-Help Litigation Manual* 348 (4th ed. 2010) (collecting cases)). Thus, "Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner complaints under 28 U.S.C. § 1915A." *Id.*

As to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is approached on a case-by-case basis. *See Urbanski*, 2019 WL 6683047, at *8. Whether claims arise out of the same transaction or occurrence depends on the "logical relationship" between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).[5] Even where a plaintiff's claims arise under the same constitutional or statutory framework, the claims will not be considered "logically connected" if they "would require separate analyses[.]" *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012). The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019) (citation modified).

---

[5] Although *Harris* arose in the context of Rule 13(a), which applies to compulsory counterclaims, "[i]n construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a)." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citing cases).

In addition to Plaintiff's claims related to the use of a chemical agent in the B.O.S. cell, Plaintiff alleges that prison officials violated his constitutional rights because he has "struggled to obtain even a minimal standard of care for a combination of [his] conditions from D.O.C." Am. Compl., ECF No. 22 ¶ 21. The court construes this as a deliberate indifference to medical and mental health needs claim arising from Plaintiff's treatment, or lack thereof. *See id.* ¶¶ 14 (describing a lack of "opportunity to see a prescriber for option of medication" at Cheshire), 19 (stating that Plaintiff "went from November 22, 2024 through February 20, 2025 without proper mental health treatment and medication").

Plaintiff's claims involving Cheshire officials are not "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved" in the same suit concerning his Plaintiff's treatment at Corrigan. *Harris*, 571 F.2d at 123. And there is no "'substantial' overlap in questions of law or fact across the[s]e claims," which involve different defendants at different prisons. *Ardolf*, 332 F.R.D. at 479.

Plaintiff's complaint also suggests a deliberate indifference claim related to Gagne's decision at Corrigan to cancel Plaintiff's psychiatric medication "without notice[,] explanation," or tapering. *See* Am. Compl., ECF No. 22 at 13. Although it is unrelated to Plaintiff's claims arising out of the use of chemical agent at Corrigan, in the interest of judicial efficiency, the court will address this claim. Construed liberally, Plaintiff stated enough to withstand initial review under the more lenient Fourteenth Amendment standard, as a reasonable person could conclude that an abrupt withdrawal from psychiatric medication could pose an excessive risk to a person's health and safety. *Shakir*, 805 F. App'x at 40 (explaining that the subjective element may be satisfied either

by showing that a defendant intentionally imposed the conditions at issue, or that a defendant "recklessly fail[ed] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety") (citation modified); *see also Anderson v. City of New York*, No. 1:14-cv-5478, 2018 WL 1258785, at *5–6 (E.D.N.Y. Mar. 12, 2018) (discussing more lenient Fourteenth Amendment standard; noting that it does "not require the same subjective intent" as claims brought under the Eighth Amendment).

Accordingly, Plaintiff's claims related to deficient mental health treatment at Cheshire must be severed and dismissed, *see*, *e.g.*, *Cora v. Gardner*, No. 3:24-cv-1450 (VAB), 2025 WL 744272, at *4 (D. Conn. Mar. 7, 2025) (severing claims arising at one prison from claims arising at another prison and dismissing those severed claims); *Staton v. Quiros*, No. 3:23-cv-00494 (JAM), 2024 WL 4349075, at *3 (D. Conn. Sept. 30, 2024) (same), but Plaintiff may proceed on his claim against Gagne.

**E. <u>Relief Requested</u>**

Plaintiff seeks damages and declaratory relief. Am. Compl., ECF No. 22 at 14–16. To the extent Plaintiff seeks damages from Pearson, Dougherty, and Gagne in their official capacities, this request is barred by the Eleventh Amendment. *Quinones v. Quiros*, No. 3:24-cv-1805 (OAW), 2025 WL 1445860, at *2 (D. Conn. May 20, 2025) ("DOC employees may not be sued in their official capacity for money damages in federal court."). Accordingly, Plaintiff may pursue damages against only Pearson, Dougherty, and Gagne in their individual capacities.

Plaintiff's request for declaratory relief seeks a declaratory judgment stating that the defendants violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendments. Am. Compl., ECF No. 22 at 14–15. Declaratory relief is unavailable for past actions. *See Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (holding that Eleventh Amendment bars declaration that State of Connecticut violated federal law in the past). Moreover, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Verrette v. Bragdon*, No. 3:20-cv-501 (KAD), 2020 WL 1923242, at *4 (D. Conn. Apr. 21, 2020) (internal quotation marks and citation omitted). "[I]f Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-cv-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Accordingly, any claim for declaratory relief must be dismissed.

Thus, Plaintiff may pursue claims for damages against Pearson, Dougerty, and Gagne in their individual capacities.

## III. ORDERS

For the reasons stated above, the court hereby orders as follows:

(1) This action may proceed on Plaintiff's Fourteenth Amendment claim for excessive force and failure to intervene against Defendant Pearson in his individual capacity, Plaintiff's Fourteenth Amendment claim for deliberate indifference to health or safety against Defendant Dougherty in his individual capacity, and Plaintiff's

Fourteenth Amendment claim for deliberate indifference against Defendant Gagne in his individual capacity. All other claims are dismissed, and all other defendants are terminated.

(2) Plaintiff may amend the complaint on or before **October 23, 2026. An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The court will review any amended complaint to determine whether it may proceed to service of process.

(3) If Plaintiff wishes to proceed only on the claims noted above, he may file a notice on the docket saying so, at which point the case immediately will proceed to service. If nothing is filed on the docket by **October 23, 2026,** the court will presume Plaintiff wishes to proceed only on these claims.

(4) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. Failure to do so can result in dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write “PLEASE NOTE MY NEW ADDRESS” on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

(5) Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file

documents with the court. Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 24th day of August, 2026.

/s/
Omar A. Williams
United States District Judge